# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JOSEPHINE E. GRIEGO,

        Plaintiff,

v.                                                                                             No. CV 21-274 CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Josephine E. Griego's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum* (the "Motion"), (Doc. 22), filed December 15, 2021; Defendant Commissioner Kilolo Kijakazi's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 24), filed February 14, 2022; and Ms. Griego's *Reply to Brief in Response to Motion to Reverse and Remand* (the "Reply"), (Doc. 25), filed February 28, 2022.

Ms. Griego filed an application for disability insurance benefits ("DIB") on March 18, 2019, alleging disability beginning December 17, 2018. (Administrative Record "AR" 12, 171). In her application, Ms. Griego claimed she was unable to work due to her left foot fusion, diabetes, post-traumatic stress disorder, anxiety, and depression. (AR 67). Ms. Griego's application was denied initially on July 31, 2019, and upon reconsideration on October 10, 2019. (AR 83, 110). Ms. Griego requested a hearing before an

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

Administrative Law Judge ("ALJ"), which was held on September 21, 2020, before ALJ Mark M. Swayze. (AR 12-24).

At the hearing, Ms. Griego appeared before ALJ Swayze with her attorney Michelle Baca and impartial Vocational Expert ("VE") Michael L. Stinson. (AR 12). ALJ Swayze issued his decision on October 30, 2020, finding Ms. Griego not disabled at any time between the alleged disability onset date and the date of his decision. (AR 23-24). Ms. Griego then requested review of ALJ Swayze's decision before the Appeals Council, which was denied on January 25, 2021. (AR 1). Ms. Griego now challenges ALJ Swayze's October 30, 2020 decision denying her claim for DIB. *See* (Doc. 22).

Ms. Griego, now represented by her attorney Amber L. Dengler, argues in her Motion that ALJ Swayze erred in six respects: (1) he improperly considered the medical evidence regarding her physical impairments in determining Ms. Griego's residual functional capacity ("RFC"); (2) he failed to properly consider the limiting effects of all her mental impairments; (3) he failed to properly account for the limiting effects of her social limitations; (4) he failed to consider lay evidence; (5) he improperly assessed her subjective symptoms of pain and limitations; and (6) he erred at step five of the five-step sequential evaluation process ("SEP") by improperly relying on VE Stinson's testimony and failing to elicit a reasonable explanation of the conflict between VE Stinson's testimony and the Dictionary of Occupational Titles and Selected Characteristics of Occupation ("DOT").

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Swayze improperly relied on VE Stinson's testimony and failed to elicit a

2

reasonable explanation of the conflict between his testimony and the DOT, the Court finds Ms. Griego's Motion shall be **GRANTED** and the case shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

I.     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and DIB, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is

disabled, the Commissioner follows the five-step SEP. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. § 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520 (a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**III.    Background**

In her application, Ms. Griego claimed she was limited in her ability to work due to her left foot fusion, diabetes, post-traumatic stress disorder, anxiety, and depression. (AR 67). At step one, ALJ Swayze determined Ms. Griego had not engaged in substantial gainful activity since December 17, 2018, the alleged disability onset date. (AR 14). At step two, ALJ Swayze found Ms. Griego had the severe impairments of degenerative changes of the left foot, degenerative disc disease, diabetes with neuropathy, obesity, major depressive disorder, anxiety with agoraphobia, and post-traumatic stress disorder. (AR 14).

5

At step three, ALJ Swayze determined Ms. Griego's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, or 404.1526. (AR 15). ALJ Swayze then found Ms. Griego has had the RFC to perform sedentary work, with the following additional restrictions:

> [S]he is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs. No climbing ladders, ropes, or scaffolds. Frequent bilateral handling and fingering. She can understand, carry out, and remember simple, routine 1-3 step instructions, make simple decisions, can perform jobs tasks at a consistent pace in goal-oriented work in which job tasks do not have to be completed within a strict time deadline. She can interact occasionally with the public, supervisors, and coworkers and respond appropriately to occasional routine changes in a work setting.

(AR 17). In formulating Ms. Griego's RFC, ALJ Swayze stated he considered her symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 17). ALJ Swayze stated he also considered opinion evidence, consistent with the requirements of 20 C.F.R. § 404.1520(c).[2] (AR 17). He concluded that while Ms. Griego's impairments could be expected to cause her alleged symptoms, the intensity, persistence, and limiting effects Ms. Griego described were not entirely consistent with the evidence in the record. (AR 18).

In evaluating the evidence, ALJ Swayze found the opinions of state agency psychological consultants Kathleen Padilla, PhD, and Laura Eckert, PhD, to be

---

[2] The Social Security Agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Ms. Griego filed her claim on March 18, 2019, the later regulations apply to this matter.

persuasive, stating that their assessments are "consistent with the overall evidence of record, which shows consistent reports of severe symptoms but also shows improvement . . . and mostly normal objective exam findings." (AR 21). ALJ Swayze also found persuasive the conclusions of state agency medical consultants William Fleming, MD, and Peyton Osborne, MD. (AR 21). He found their assessment that Ms. Griego can perform sedentary exertional work with postural limitations "generally consistent with the overall evidence of record." (AR 21). He found the opinion of physical therapist Alegre Murguia, DPT, CEAS, that Ms. Griego can perform medium work to be unpersuasive, as Dr. Murguia had not evaluated Ms. Griego since 2016, and "recent records show [Ms. Griego] is more appropriately limited to sedentary work." (AR 21). ALJ Swayze likewise disregarded the August 2018 opinion of Daniel Romanelli, MD, that Ms. Griego is limited to light work, stating that "subsequent evidence shows [Ms. Griego] is better limited to sedentary work." (AR 22).

At step four, ALJ Swayze found Ms. Griego was incapable of performing her past relevant work as a psychiatric aide. (AR 22). ALJ Swayze proceeded to step five, finding that on December 17, 2018, Ms. Griego was a "younger individual age 45-49." (AR 22). He further found that Ms. Griego has at least a high school education. (AR 22). ALJ Swayze found that considering VE Stinson's testimony and Ms. Griego's age, education, work experience, and assessed RFC, that Ms. Griego could perform other work as a document preparer, cutter paster, or surveillance system monitor. (AR 23). After finding Ms. Griego was able to perform other work existing in significant numbers in the national economy, ALJ Swayze concluded she was "not disabled" as defined by § 20 C.F.R. § 404.1520(g). (AR 23).

## IV. Analysis

In her Motion, Ms. Griego argues ALJ Swayze erred in his RFC assessment. *See* (Doc. 22). First, she contends ALJ Swayze improperly considered the medical evidence regarding her physical limitations in assessing her RFC—specifically, the medical evidence regarding her foot pain and limitations, and the evidence of her diabetic neuropathy. *Id.* at 10-13. Second, Ms. Griego contends ALJ Swayze failed to properly account for all her mental limitations when assessing her RFC. *Id.* at 14. In particular, she maintains that ALJ Swayze improperly assessed the opinions of state agency psychological consultants Dr. Padilla and Dr. Eckert. *Id.* at 14. Third, she argues that ALJ Swayze failed to properly account for the limiting effects of her social limitations. *Id.* at 17. Fourth, she contends that ALJ Swayze failed to consider lay evidence—in particular, her husband's October 14, 2019 third-party adult function report. *Id.* at 19. Fifth, she argues that ALJ Swayze erred in assessing her subjective symptoms of pain and limitations. *Id.* at 20.

In response, the Commissioner contends that "[t]he bulk of [Ms. Griego's] arguments constitute a challenge to the ALJ's weighing of the evidence, which is not a valid cause for remand." (Doc. 24 at 6). First, the Commissioner argues that ALJ Swayze adequately discussed Ms. Griego's allegations relating to her foot pain and limitations, as well as the evidence of her diabetic neuropathy, and that the possibility of drawing two inconsistent conclusions from the evidence does not prevent ALJ Swayze's findings from being supported by substantial evidence. *Id.* at 7-10. Second, the Commissioner maintains that ALJ Swayze properly assessed the opinions of Dr. Padilla and Dr. Eckert when assessing Ms. Griego's mental RFC, because he discussed

"supportability and consistency" with the overall record, and he was "not required to explain how he considered the other remaining factors" under the revised regulations. *Id.* at 11. Third, the Commissioner contends that ALJ Swayze thoroughly considered the mental evidence of record, and cited substantial evidence in support of his assessment of Ms. Griego's RFC, "including with respect to social limitations." *Id.* at 16. Fourth, the Commissioner argues that under the revised regulations, ALJ Swayze was not required to discuss lay evidence such as Ms. Griego's husband's October 14, 2019 third-party adult function report, and that, in any case, ALJ Swayze did discuss Ms. Griego's "virtually identical September 2019 function report," meaning his omission of her husband's report would not be harmful. *Id.* at 16-17. Fifth, the Commissioner maintains that ALJ Swayze's subjective symptoms findings are entitled to great deference, that he adequately assessed her subjective symptoms as he was not required to set forth a formalistic factor-by-factor recitation of the evidence, and that the Court may not reweigh the evidence. *Id.* at 17-18.

Ms. Griego also argues that ALJ Swayze committed step five errors. (Doc. 22 at 22). First, she contends that ALJ Swayze erred at step five by inappropriately relying on the vocational testimony even though it was "based upon information that does not include all of the claimant's impairments" given the flawed RFC assessment. *Id.* Second, Ms. Griego contends that ALJ Swayze erred by failing to clarify VE Stinson's testimony, as VE Stinson testified that Ms. Griego could perform jobs that require a General Educational Development[3] ("GED") including "level-three reasoning" ability

---

[3] General Educational Development "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT App. C, § III, 191 WL 688702. "The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." *Id*. There are 6 levels of "Reasoning

9

whereas she contends her assessed RFC "is more consistent with a reasoning level 2." *Id.* at 23. Third, she contends ALJ Swayze erred because once the jobs which require "level-three reasoning" were eliminated, the number of remaining jobs in the national economy is not significant. *Id.* at 24.

In response to Ms. Griego's arguments regarding ALJ Swayze's purported step five errors, the Commissioner argues that ALJ Swayze was entitled to rely on VE Stinson's testimony because it was based on "a hypothetical question that included all the limitations [ALJ Swayze] ultimately included in the RFC assessment." (Doc. 24 at 20). Next, the Commissioner contends that ALJ Swayze was not obligated to clarify VE Stinson's testimony, as Ms. Griego's attorney "specifically asked [VE Stinson] about the identified jobs' GED reasoning levels, and the expert testified that these jobs would fall within a requirement for a simple, routine job.'" *Id.* at 24. The Commissioner maintains that VE Stinson's testimony that level-three reasoning is not "above and beyond" that required for a "simple, routine job" is sufficient to resolve "any potential conflict." *Id.* at 19.

### A. ALJ Swayze's Handling of VE Stinson's Testimony

Ms. Griego argues that ALJ Swayze failed to clarify VE Stinson's inconsistent testimony regarding the jobs Ms. Griego could perform given her limitation to "simple, routine 1-3 step instructions." (Doc. 22 at 22). In particular, she contends that, under *Hackett v. Barnhart*, 395 F.3d 1168 (10thCir. 2005), level-three reasoning is inconsistent with a limitation to simple tasks and instructions, and thus VE Stinson's testimony that Ms. Griego could perform the jobs of document preparer and surveillance system

---

Development," with 1 representing the lowest level and 6 representing the highest. *Id.*; *see Ammons v. Saul*, 1:18-cv-1212 JHR, 2020 WL 1434247, at *4 (D.N.M. Mar. 23, 2020).

monitor—which require level-three reasoning—created a conflict that ALJ Swayze was required to address. *Id.* at 23. Ms. Griego contends that ALJ Swayze instead "simply adopted [VE Stinson's testimony], and failed to address the discrepancy." *Id.*

In response, the Commissioner argues that ALJ Swayze "inquired about conflicts with the DOT, and the expert confirmed that there was no [relevant] conflict between her testimony and the DOT." (Doc. 24 at 18). The Commissioner contends that VE Stinson's testimony that the jobs requiring level-three reasoning "would fall within a requirement for a simple, routine job because a GED 'reasoning level 3 is roughly equivalent to 7th or 8th grade level'" was adequate to resolve any alleged conflict. *Id.* at 19 (citing AR 59). The Commissioner thus argues that ALJ Swayze did not err in his handling of VE Stinson's testimony. *Id.* at 20.

    1. *VE Stinson's Testimony*

At the hearing, ALJ Swayze asked VE Stinson, among other things, whether his testimony was based on the DOT, to which VE Stinson responded in the affirmative. (AR 54). ALJ Swayze then presented a hypothetical question to VE Stinson, which incorporated ALJ Swayze's assessed RFC of Ms. Griego, including that the hypothetical individual retains the capacity to "understand, carry out and remember simple routine one to three step instructions." (AR 55). In response, VE Stinson testified that a hypothetical individual with Ms. Griego's assessed RFC would not be able to perform her past work, but that she would be able to work as a document preparer, a cutter paster, or a surveillance system monitor. (AR 56). VE Stinson testified that the DOT does not specifically address understanding, remembering and applying information, but that instead his testimony was based on his experience, labor market research, and his

review of the literature. (AR 58). He testified, prior to questioning by Ms. Griego's counsel, that the remainder of his testimony was consistent with the DOT. (AR 58).

Next, Ms. Griego's counsel asked ALJ Swayze whether "routine . . . one to three step instructions meant simple, routine work," to which ALJ Swayze responded that he had already included "simple routine one to three step instructions" in his hypothetical. (AR 59). Counsel then proceeded to question VE Stinson, who testified that both the surveillance system monitor job and the document preparer job are associated with a reasoning level of three. (AR 59). Counsel asked whether level-three reasoning would be "above and beyond what would be required for a simple, routine job," in VE Stinson's estimation, to which he responded in the negative, explaining that "a reasoning level 3 is roughly equivalent to 7th or 8th grade level." (AR 59).

Upon further questioning by counsel, VE Stinson testified that the DOT equates level-three reasoning to a seventh or eighth grade education. (AR 60). Counsel asked for a specific citation, but then withdrew the question, and requested that VE Stinson read the definition of level-three reasoning in the DOT into the record, which he did, stating that "it is [the ability to] apply commonsense understanding[,] to carry out instructions furnished in written, oral, or diagrammatic form [to] deal with problems involving several concrete variables in or from standardized situations." (AR 61). VE Stinson further testified that the jobs discussed are "considered in the simple and routine category" because they were at a Specific Vocational Preparation level of two. (AR 59).

After counsel's examination of VE Stinson, ALJ Swayze did not inquire further. (AR 61-62). Instead, there was a brief discussion of whether any policy statements by

the Social Security Agency (the "Agency") state that level-three reasoning is above and beyond a simple routine instruction, and then ALJ Swayze concluded the hearing. (AR 62).

### 2. ALJ Swayze's Discussion of VE Stinson's Testimony

In ALJ Swayze's October 30, 2020 decision, he noted VE Stinson's testimony that a hypothetical individual with Ms. Griego's RFC could not perform her past work as a psychiatric aide, but that such an individual could perform other jobs including document preparer, cutter paster, and surveillance system monitor. (AR 22-23). ALJ Swayze stated in his decision that he determined VE Stinson's testimony was consistent with the information contained in the DOT. (AR 23). He also indicated that he accepted VE Stinson's testimony as reasonably based on VE Stinson's own education, training, and experience. (AR 23). ALJ Swayze did not acknowledge any conflict between VE Stinson's testimony and the DOT, or discuss whether or not counsel's inquiry resolved any conflict, in his decision. *See* (AR 12-24).

### 3. Whether There Was a Conflict Between the DOT and VE Stinson's Testimony

The DOT defines occupations, in part, by the reasoning level required to perform the occupation. *Brookbank v. Berryhill*, 1:17-cv-142 CG, 2017 WL 5612554, at *3 (D.N.M. Nov. 21, 2017). Reasoning levels describe a job's requirements regarding understanding instructions and dealing with variables. *Id.* They range in complexity from level one to level six, with one being the simplest and, of relevance to this case, with three requiring a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and to "[d]eal with problems involving several concrete variables in or from standardized situations." *See*

13

*Ammons v. Saul,* 1:18-cv-1212 JHR, 2020 WL 1434247, at *4 (D.N.M. Mar. 23, 2020) (citing DOT # 249.587-018; DOT # 219.587-010).

The Tenth Circuit has held that occupations requiring a reasoning level of three are inconsistent with a claimant's limitation to performing only "simple and routine work tasks." *Hackett*, 395 F.3d at 1176. Accordingly, this Circuit has consistently identified a conflict between limitations to simple and routine tasks and level-three reasoning. *See, e.g., Pritchett v. Astrue*, 220 F. App'x 790, 793 (10th Cir. Mar. 23, 2007) (unpublished) (finding discrepancy between limitation to simple and repetitive tasks and level-three reasoning required by the job identified by the VE); *Garcia v. Barnhart*, 188 F. App'x 760, 766-67 (10th Cir. July 13, 2006) (unpublished) (finding conflict between a claimant's limitation to simple and repetitive tasks and level-three reasoning required in the DOT for jobs identified by the VE); *Hudman v. Astrue*, 1:08-cv-00643 RLP, 2009 WL 10708253, at *8 (D.N.M. Apr. 16, 2009) (finding conflict between plaintiff's limitation to follow only simple verbal and written instructions and level-three reasoning required in the DOT for jobs identified by the VE).

In this case, ALJ Swayze limited Ms. Griego to understanding, carrying out, and remembering "simple, routine 1-3 step instructions," making simple decisions, and performing jobs in which tasks "do not have to be completed within a strict time deadline." (AR 17). Despite VE Stinson's testimony, the Court can find no such support for the position that these limitations equate to a seventh-grade level, either in the DOT or in the law. Nevertheless, even if there were support for that position, the foregoing case law makes it clear that these identified limitations inherently conflict with level-

three reasoning. *Hackett*, 395 F.3d at 1176. The Court therefore finds that VE Stinson's testimony that Ms. Griego can perform reasoning level three jobs conflicts with the DOT.

### 4. Whether ALJ Swayze Elicited a Reasonable Explanation for the Conflict Between VE Stinson's Testimony and the DOT

At steps four and five, an ALJ may consult a VE to determine whether a claimant is able to perform her past work, or other work in the national economy. 20 C.F.R. § 404.1560(b)-(c); *see* SSR 00-04p; *Winfrey*, 92 F.3d at 1025 (holding that a VE may supply information to the ALJ about the demands of a claimant's past relevant work). However, it is well-established that "before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability," an "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also* SSR 00-04p; *Lopez v. Colvin*, 2:14-cv-320 CG, 2015 WL 13662594, at *3 (D.N.M. June 11, 2015).

In *Haddock v. Apfel*, a Tenth Circuit case addressing the issue, the Court enumerated two examples of reasonable explanations, including 1) that the job about which the VE is testifying is not included in the DOT, but rather is documented in some other acceptable source, or 2) that a specified number or percentage of a particular job is performed at a lower RFC level than the DOT shows the job generally requires. *Haddock*, 196 F.3d at 1091-92; *see also Rivera v. Berryhill*, 242 F. Supp. 3d 1226, 1239-40 (D.N.M. 2017).

Here, Ms. Griego's counsel arguably elicited an explanation for the conflict. (AR 59-61). In response to counsel's questioning, VE Stinson explained that "these jobs would fall within a requirement for a simple, routine job because a GED reasoning Level

15

3 is roughly equivalent to 7th or 8th grade level," and that "GED reasoning level 3 is not above and beyond what would be required for a simple, routine job." (Doc. 24 at 19) (internal citations omitted).

The question the Court must consider is whether this explanation by VE Stinson was a *reasonable* explanation for the conflict between level three reasoning and the DOT. *Haddock*, 196 F.3d at 1091. First, the Court is not convinced that this testimony by VE Stinson amounted to an explanation for the conflict. In his testimony, VE Stinson did not explain how Ms. Griego could be expected to perform jobs that required functioning at the seventh or eighth grade levels. While Ms. Griego does indeed have above an eighth grade education, as she has a high school education, the issue is the amount of Ms. Griego's *decline*—her *residual* functional capacity, not her prior maximum functional capacity. *See* (AR 22, 59-60). Her high school education is thus not dispositive. *See*, *e.g.*, *Garza v. Barnhart*, 1:02-cv-0382 LH/LCS, 2002 WL 35649492 (D.N.M. Dec. 4, 2002) (reversing for failure to resolve conflict between VE testimony and DOT where claimant had completed high school but had literacy limitations). Indeed, as VE Stinson testified, and ALJ Swayze found, Ms. Griego is unable to perform any past relevant work. (AR 22).

Contrary to the Commissioner's contention that the above testimony by VE Stinson "is all that was required to resolve any potential conflict[,]" ALJ Swayze was not entitled to rely blindly on VE Stinson's testimony. *Valdez v. Kijakazi*, 1:20-cv-1263 RB/GJF, 2022 WL 278731, at *7 (D.N.M. Jan. 31, 2022), *report and recommendation adopted*, 2022 WL 683024 (D.N.M. Mar. 8, 2022) ("[N]ot everything a VE says will suffice to meet the Agency's burden of proof."); *Kelley v. Saul*, 1:18-cv-1056 LF, 2019

16

WL 7293408, at *5 (D.N.M. Dec. 30, 2019) ("[M]ere reliance on the VE's affirmation of consistency is not enough."). Instead, ALJ Swayze was required to affirmatively elicit a reasonable explanation of the contradiction. *See Haddock*, 196 F.3d at 1091–92.

Moreover, even if VE Stinson's testimony constituted an attempt to resolve the conflict with the DOT, his explanation does not comport with either of the potential reasonable explanations enumerated in *Haddock*, and is not tailored to Ms. Griego. *See Haddock*, 196 F.3d at 1091–92; *see also Troy ex rel. Daniels v. Apfel*, 225 F. Supp. 2d 1234, 1240 (D. Colo. 2002) (VE's own observation and job analyses performed 2-3 years before hearing did not constitute reasonable explanation of conflict with DOT); (AR 59-60). After VE Stinson testified regarding the level-three reasoning jobs, ALJ Swayze did not inquire further. (AR 61-62). The Court therefore finds that ALJ Swayze failed to elicit a reasonable explanation of the conflict between VE Stinson's testimony and the DOT. ALJ Swayze thus committed error.

### B. Whether ALJ Swayze's Handling of VE Stinson's Testimony was Reversible Error

Ms. Griego argues that failure to explain *any* inconsistency between VE Stinson's testimony and the DOT is "harmful, legal error requiring remand." (Doc. 22 at 23). Ms. Griego also contends that once the level-three reasoning jobs of document preparer and surveillance system monitor are eliminated, "only the job of cutter paster remains," and that the number of cutter paster jobs in the national economy, which VE Stinson testified to be 12,000, is "not so robust that this court should allow the step five denial to stand." *Id.* at 24. Ms. Griego maintains that the Court should remand this case so that the ALJ can appropriately analyze whether there are a significant number of cutter paster jobs in the economy. *Id.* at 25. The Commissioner argues that there was no

unexplained conflict at step five, and does not address Ms. Griego's arguments regarding whether the number of cutter paster jobs in the national economy is significant. (Doc. 24 at 18-20).

An ALJ's error may be considered harmless in exceptional circumstances, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). If there is an unresolved conflict between the VE's testimony and the DOT, however, the VE's testimony cannot constitute substantial evidence to support a determination of non-disability. *See Etcitty v. Saul*, 1:18-cv-1148 CG, 2019 WL 3451489, at *5 (D.N.M. July 31, 2019); *Lopez*, 2015 WL 13662594, at *5 (finding that ALJ's failure to elicit reasonable explanation for discrepancy between VE testimony and the DOT was reversible error); *Madron v. Astrue*, 311 F. App'x 170, 181-82 (10th Cir. Feb. 11, 2009) (unpublished) (finding error where ALJ relied on VE testimony without resolving conflict with DOT).

As explained above, ALJ Swayze failed to either identify or explain the apparent conflict between VE Stinson's testimony and the DOT. *See Kelley*, 2019 WL 7293408, at *5. Because there is an unresolved conflict between VE Stinson's testimony and the DOT, VE Stinson's testimony cannot constitute substantial evidence to support ALJ Swayze's determination of non-disability, meaning ALJ Swayze committed reversible error. *See Etcitty*, 2019 WL 3451489, at *5; *Lopez*, 2015 WL 13662594, at *5; *Madron*, 311 F. App'x at 181-82; *Urias v. Berryhill*, 2:16-cv-1063 KBM, 2017 WL 3025926, at *9 (D.N.M. July 11, 2017) (finding harmful error "because there was an apparent conflict

between the jobs identified in this case and Plaintiff's RFC."). The Court thus finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful error mandating remand, the Court will not address the parties' arguments regarding additional errors.

V.      **Conclusion**

**IT IS THEREFORE ORDERED** that Ms. Griego's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum*, (Doc. 22), is **GRANTED**. This case is **REMANDED** for further proceedings consistent with this Order**.**

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE